```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| TRIFOUND FINANCIAL, LLC, | |
| Plaintiff, | 1:20-cv-19303-NLH-AMD |
| v. | **OPINION** |
| RICHARD GREENBERG, | |
| Defendant. | |

**APPEARANCES**:

MATHIEU J. SHAPIRO
OBERMAYER, REBMANN, MAXWELL & HIPPEL, LLP
1120 ROUTE 73
SUITE 420
MT. LAUREL, NJ 08054-5108

*On behalf of Plaintiff*

KEVIN M. SIEGEL
THE LAW OFFICES OF KEVIN M. SIEGEL
ONE GREENTREE CENTRE – SUITE 201
10000 LINCOLN DRIVE EAST
MARLTON, NJ 08053

*On behalf of Defendant*

**HILLMAN, District Judge**

This is an action for equitable and legal relief based on Defendant's alleged breaches of a business purchase agreement between the parties and tortious interference with Plaintiff's business. Presently before the Court is the motion of Plaintiff for injunctive relief pending the arbitration of the claims between the parties related to the purchase agreement. For the

reasons expressed on the record during the Court's hearing on Plaintiff's motion, and for those reasons expressed below, the Court will grant Plaintiff's motion on the two outstanding issues not stipulated to by the parties.

## BACKGROUND[1]

In September 2020, Plaintiff TriFound Financial, LLC ("TriFound") acquired Vision Financial Services Inc., d/b/a RJG Financial and CPA Services ("RJG Financial"), pursuant to a purchase agreement, effective as of September 8, 2020 between TriFound, RJG Financial, and RHG Financial's owner, Defendant Richard Greenberg. Following TriFound's acquisition of Defendant's business pursuant to the purchase agreement, TriFound claims that Defendant has interfered with Trifound's attempts to successfully operate its new business by engaging in damaging behavior, which has included misappropriating TriFound property, including passwords and physical technological property needed to function, disrupting client relationships, speaking with TriFound clients, and posting disparaging comments about TriFound on internet websites, such a Facebook and Yelp. TriFound claims that Defendant's illegal and unjustified behavior has damaged TriFound and is actively preventing TriFound from conducting effective business, including

---

[1] The background information comes from Plaintiff's verified complaint, unless otherwise referenced.

2

processing any new business.

On December 15, 2020, TriFound filed a verified complaint against Defendant for (1) breach of contract; (2) injunctive relief pending enforcement of contractual arbitration provision; (3) conversion; and (4) tortious interference with prospective economic advantage.[2]  On December 17, 2020, this Court issued an Order to Show Cause as to why a preliminary injunction should not be issued under Rule 65(a) of the Federal Rules of Civil Procedure against Defendant, and set a briefing schedule and hearing date.

On December 29, 2020, the Court held a hearing on TriFound's request for injunctive relief.  At the hearing, the parties represented that they had been, and would continue to, attempt to resolve the issues raised by TriFround's requests for injunctive relief between themselves.  This Court directed the parties to the Magistrate Judge to facilitate expedited discovery, and set a continuation of the preliminary injunction hearing for January 19, 2021.

At the Court's second hearing, the parties represented that

---

[2]  In the purchase agreement, TriFound and Defendant agreed that Michigan law applies to the purchase agreement, that any dispute thereunder shall be settled by binding arbitration, and that any party to the purchase agreement could seek preliminary relief necessary to protect its rights pending the completion of arbitration.  (Docket No. 8 at 6.)

3

they had come to an agreement on all but two of TriFound's bases for injunctive relief against Defendant. The parties disagreed on two provisions in a proposed stipulated order presented to the Court: (1) the requirement that Defendant "locate and remove any posts or reviews about TriFound that Defendant has posted on the Internet on his own behalf or on behalf of another person"; and (2) the demand that Defendant "[s]urrender to TriFound any and all usernames and passwords for the insurance carrier websites enumerated in Appendix B to this Order, provided that Defendant coordinates with the insurance carrier websites to ensure appropriate protections are implemented to prevent TriFound the ability to see or access any of Defendant's personal information that may be ordinarily visible on the carrier websites[.]"

TriFound claims that Defendant's continued refusal to provide to TriFound the usernames and passwords to the insurance carrier websites is critically damaging to TriFound and the assets it purchased. Defendant's intentional concealment of this information has caused, and will continue to cause, irreparable harm to TriFound, as the company is unable to initiate customer contact and submit customer applications without access to these websites. TriFound further claims that Defendant's review of TriFound posted on the website Yelp violates the non-disparagement clause in the parties' purchase

4

agreement by persuading its customers from doing business with TriFound, which is also resulting in irreparable harm to TriFound.

During the hearing, the Court agreed with TriFound and ordered Defendant to turn over the requested passwords by 5:00 p.m. that day.  The Court also directed Defendant to remove his posting on Yelp.[3]  The Court issues this Opinion and its findings for the reasons expressed on the record and as set forth below.

## DISCUSSION

**A.   Subject Matter Jurisdiction**

This Court has jurisdiction over this matter based on the diversity of citizenship of the parties and an amount in controversy in excess of $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332(a).  TriFound Financial LLC is comprised of three members: Gary Harris, who owns the majority of TriFound, and Justin Pippert and Shane Hemphill, whom, together, own a very small percentage of the company.  Each of these three members is a citizen of Michigan.  Greenberg is a citizen of New Jersey.

**B.   Standard for Preliminary Injunction**

A preliminary injunction "is an extraordinary remedy . . .

---

[3] The Court also ordered TriFound to give security in an amount of $50,000 to the Court's registry pursuant to Fed. R. Civ. P. 65(c).

which should be granted only in limited circumstances." Holland v. Rosen, 895 F.3d 272, 285–86 (3d Cir. 2018) (internal citations omitted).[4] A preliminary injunction should not be issued "unless the movant, by a clear showing, carries the burden of persuasion." Id. (citation omitted). That burden typically involves four factors: (1) a reasonable likelihood of success on the merits; (2) irreparable harm to the applicant; (3) whether the denial of a preliminary injunction would injure the moving party more than the issuance of an injunction would harm the non-moving party; and (4) whether the grant of relief would serve the public interest. Id. (citation omitted).

"[A] movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017)

---

[4] Although TriFound references Michigan law for the standard for imposing injunctive relief, federal law governs the analysis of whether this Court should grant a preliminary injunction, while state law governs the substance of TriFound's claims. See Tracey v. Recovco Mortgage Management LLC, 451 F. Supp. 3d 337, 341 n.1 (D.N.J. 2020) (citation omitted) ("In deciding a motion for a preliminary injunction, a district court applies the federal, not state, standard. . . . This is true even in a diversity case in which a court is applying state substantive law.").

6

(citations omitted).

"If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Id. "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." Id. (citation omitted).

**C. Analysis**

    **1. A reasonable likelihood of success on the merits**

TriFound seeks injunctive relief relative to Defendant's breach of two provisions in the purchase agreement. The first concerns the transfer of assets. Pursuant to the purchase agreement, Defendant was obligated to sell and deliver all of the business assets, properties, and rights to TriFound, which included, but were not limited to, all RJG Financial accounts, receivables, contract rights, records, documents, goodwill, and other tangible and intangible property and assets not otherwise specifically excluded. (Docket No. 8 at 5.)

TriFound relates that Defendant refuses to provide it with passwords and log-in information for several insurance carrier websites, which TriFound contends are critically important to its business and are among the assets TriFound purchased from

7

Defendant.  TriFound relates that upon logging into such a website, an individual is permitted to see all historic, pending, and active business, including extensive notes, regarding every customer's history with the insurance carrier. More specifically, the carrier websites store, among other things, a customer's contact information, the name of the agent responsible for the customer, the financial products the customer has applied for, purchased, or is purchasing, the customer's application date, the customer's anticipated premium, and the agent's commission schedule.  The websites also allow access to the applications and documents, which anyone with appropriate credentials can download.

TriFound further relates that immediately following TriFound's acquisition, and implicitly acknowledging that the log-in credentials were among the assets TriFound purchased, Defendant gave TriFound the log-in credentials necessary for TriFound to access all of the insurance carrier websites.  On November 30, 2020, however, after TriFound already had access to the websites, Defendant unilaterally, unexpectedly, and inexplicably changed the usernames and passwords, blocking TriFound's access, and effectively taking back a key asset previously sold and conveyed to TriFound.

Defendant, claiming relinquishing this information would provide TriFound the ability to access and view Defendant's

8

personal information including his personal investments, has refused to provide the passwords and other information TriFound once had access to and is now requesting again. Defendant further claims the information available on the insurance carrier websites is available in paper form.

In response to Defendant's claim that providing TriFound with the access information would enable the company to see his personal information, TriFound invited Defendant to contact the insurance carrier websites and make private his personal investment information. Defendant has refused to do so.

Defendant does not dispute any of this related by TriFound. Defendant contends, however, that there are good reasons why Defendant originally provided the usernames and passwords but was then compelled to change them so TriFound could not access the account, but those reasons – and the propriety of Defendant's actions – can be litigated in arbitration. Without revealing those reasons, Defendant argues that the only relevant question is whether TriFound's current inability to access the websites is causing it irreparable harm that cannot be compensated by a post-arbitration monetary award, and the answer to that question is no because Plaintiff already has access to all the information it claims it lacks due to the withheld website usernames and passwords.

The second provision at issue concerns non-solicitation and

9

non-piracy covenants:

> For a period of five (5) years starting on the Effective Date, Seller Parties shall not, directly or indirectly: . . . (iv) persuade any Person that is a customer of Buyer or its Affiliates at the time of such persuasion, or that was a customer of Buyer or its Affiliates during the one (1) year period preceding the persuasion, to cease doing business with or to reduce the amount of business done with Buyer or its Affiliates; or (v) persuade any insurance company or other supplier of Buyer or its Affiliates to cease doing business with or to reduce the amount of business done with Buyer and its Affiliates.

(Id. at 5-6.)

On December 17, 2020, Defendant posted on Yelp the following review: "These people are scammers dishonest and not to be trusted. They also started trying to twist and turn some of my clients [sic] annuities that would've cost my clients over $100,000 in surrender fees, so that Tri[F]ound can get my clients['] money and then invested [sic] in their hedge fund! STAY AWAY!!!!!"  (Docket No. 23-1 at 48.)  As a condition of resolution, TriFound requested that Defendant remove his post and refrain from making any derogatory posts against TriFound, either on his behalf or on behalf of another person.  After admitting that he made the post, Defendant refused to remove it.

In response, Defendant argues that the restrictive covenant at issue here is not a generalized, non-disparagement clause that prohibits all types of critical comment, but rather it is very specific and only prohibits Defendant from actually

10

persuading TriFound's customers to cease or reduce doing business with TriFound, which has not occurred.  Defendant argues that TriFound must prove actual, irreparable harm before it is entitled to preliminary injunctive relief, and TriFound has failed to meet that burden.  As a result, Defendant argues that he should not be required to remove his Yelp post, and the issue of damages, if any, caused by the post should be resolved at arbitration.

To prevail on a breach of contract claim under Michigan law, a plaintiff must prove that: "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach."  Miller-Davis Co. v. Ahrens Const., Inc., 848 N.W.2d 95, 104 (Mich. 2014) (citation omitted).

TriFound has demonstrated that it will likely succeed on its breach of contract claim against Defendant for the two provisions at issue in the purchase agreement.  As for the turn-over of assets provision, Defendant does not dispute that he had initially provided the insurance carrier website passwords to TriFound, but two months later he prevented TriFound from accessing those websites.  Defendant also does not dispute that TriFound's access to this information is encompassed by the purchase agreement and part of the business assets that TriFound purchased from Defendant.  Regardless of whether Defendant

turned over paper files that contain the same information that is available on the websites, access to the websites is a separate asset purchased by TriFound, which is evidenced by Defendant initially providing that access after the purchase agreement was signed.[5]  It is clear that Defendants' refusal to relinquish the passwords to TriFound is a breach, and continues to be a breach, of the parties' contract.

With regard to the non-solicitation and non-piracy provision, TriFound has demonstrated that it will likely succeed on its claim that Defendant breached that provision in the purchase agreement.  Although at this stage in the case TriFound has not discovered whether Defendant's post on Yelp has directly persuaded any of its customers to cease or reduce doing business with TriFound, it is likely that the post by Defendant, Richard Greenberg, who formerly ran the business for many years and posted the review as "Rich G," would, at a minimum, indirectly persuade his former, and now TriFound's current, customers from continuing business with TriFound.  A simple Google search would reveal the post, and it is likely that a current customer who has placed his trust in TriFound with his investments would

---

[5] As the Court analogized during the hearing, even if TriFound could walk to a customer's home, there is no reason why TriFound could not use the company car, which it purchased as part of the business, to drive there, thus requiring the former owner, Defendant, to turn over the keys.

inquire into other customers' views of the business. Thus, it is evident that Defendant's Yelp posting has breached, and continues to breach, the parties' contract.

### 2. Irreparable harm to TriFound

The second of the first two most critical factors for obtaining a preliminary injunction is whether it is more likely than not that TriFound will suffer irreparable harm in the absence of preliminary relief. Reilly, 858 F.3d at 179. "Irreparable harm" means harm "such that legal remedies are rendered inadequate." Tilden Recreational Vehicles, Inc. v. Belair, 786 F. App'x 335, 342 (3d Cir. 2019) (citing Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997)); HR Staffing Consultants, LLC v. Butts, 2015 WL 3492609, at *15 (D.N.J. 2015), aff'd 627 F. App'x 168, 172 (3d Cir. 2015) (citing Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989) (citing Sampson v. Murray, 415 U.S. 61, 90 (1964)) ("Harm is considered 'irreparable' if it is not redressable by money damages at a later date, in the ordinary course of litigation."). The irreparable harm inquiry concerns threat of future harm, not past harm. Anderson, 125 F.3d at 163–64.

TriFound has demonstrated that it will suffer irreparable harm if Defendant is not enjoined from continuing to breach the purchase agreement. First, with regard to Defendant's refusal

13

to turn over the insurance carrier website passwords, TriFound has demonstrated that its inability to access those websites is currently interfering with its ability to conduct their business.  The determination of how much its lack of access, which is critical to its business, is damaging its business cannot be quantified at this stage.  As noted above, even though Defendant contends that TriFound has the information contained on the websites in paper files at the office, that alternative access is irrelevant to Defendant's refusal to turn over the website passwords, which are assets TriFound purchased from Defendant.  The passwords would also enable TriFound, which has its headquarters in Michigan and ten locations throughout the country, to more efficiently access its clients' information to assist them with their accounts and money management.

Moreover, Defendant's position on this issue is undermined by the fact he had turned over the passwords in September 2020 and TriFound used them until November 30, 2020, when Defendant unilaterally changed them.  Additionally, Defendant's concern that his personal information will be disclosed to TriFound is easily remedied by Defendant simply contacting those insurance carriers to set up private access to his information.

Second, as to the Yelp post, the repercussions to TriFound's business also cannot be compensated in monetary damages.  While Defendant's post remains readily viewable on the

14

internet, it is likely to result in unquantifiable damage to TriFound's business, such as lost profits, lost future business, and loss of goodwill.  "Courts in the Third Circuit and this District have had no difficulty in finding that the loss of business opportunities and goodwill constitutes irreparable harm. . . .  This is so because the extent of the injury to the business as a result of this type of conduct cannot be readily ascertained, and as such, does not lend itself to a straightforward calculation of money damages."  ADP, LLC, v. Olson, 2020 WL 6305554, at *12 (D.N.J. Oct. 28, 2020) (citations and alterations omitted).

Consequently, the Court finds that TriFound has met the irreparable harm factor for obtaining a preliminary injunction.

>    **3.   Whether the denial of a preliminary injunction would injure TriFound more than the issuance of an injunction would harm Defendant**

Having found that the first two gateway factors for a preliminary injunction have been met, the Court must next consider whether the denial of a preliminary injunction would injure TriFound more than the issuance of an injunction would harm Defendant.  Reilly, 858 F.3d At 179.

TriFound has demonstrated how it will be injured if the Court does not direct Defendant to provide the passwords and take down his internet post.  Defendant has not articulated how he will be harmed if the Court so orders except for possible

15

access to information private to him. As noted, however, it is within Defendant's own power to prevent such harm if it exists by contacting the insurance companies himself. Thus, the balance of harm in this case clearly favors TriFound, and not Defendant.

### 4. Whether the grant of relief would serve the public interest

The final factor the Court must consider in determining whether to issue a preliminary injunction is whether such an injunction would serve the public interest. <u>Reilly</u>, 858 F.3d At 179. The public has an interest in upholding reasonable, bargained-for provisions of contracts. <u>Bimbo Bakeries USA, Inc. v. Botticella</u>, 613 F.3d 102, 119 (3d Cir. 2010) (citation omitted). Additionally, where, as here, if the plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, the public interest will almost always favor the plaintiff. <u>National Reprographics, Inc. v. Strom</u>, 621 F. Supp. 2d 204, 230 (D.N.J. 2009).

The public interest factor favors the issuance of a preliminary injunction against Defendant and in TriFound's favor.

### CONCLUSION

All four of the factors discussed above, when taken together, balance in favor of granting the requested preliminary

16

relief.  The Order implementing the Court's findings here, along with the parties' stipulated agreements on TriFound's other request for injunctive relief, are contained in the Order entered yesterday after the continued preliminary injunction hearing.  (Docket No. 27.)


Date: January 20, 2021                s/ Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.

17